IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| LATOYYA LEE WILLIAMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 6-12-CV-03561-REL-SSA |
| ) | |
| CAROLYN COLVIN, Acting Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |

**<u>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT</u>**

Plaintiff Latoyya Lee Williams seeks review of the final decision of the Commissioner of Social Security denying plaintiff's application for supplemental security income benefits under Title XVI of the Social Security Act ("the Act"). Plaintiff argues that the Administrative Law Judge (ALJ) (1) failed to properly assess plaintiff's residual functional capacity (RFC) and (2) failed to conduct a proper credibility analysis. I find that the substantial evidence in the record as a whole supports the ALJ's conclusion that plaintiff is not disabled. Therefore, plaintiff's motion for summary judgment will be denied and the decision of the Commissioner will be affirmed.

*I.    BACKGROUND*

On September 29, 2009, plaintiff protectively applied for supplemental security income benefits alleging that she had been disabled since August 1, 2003 (Tr. 128-34). When she filed her claim, plaintiff alleged disability due to a seizure disorder and a birth defect in her lower spine (Tr. 172). Plaintiff's application was denied on May 11, 2010 (Tr. 58-64). On September 6, 2011, a hearing was held before the ALJ (Tr. 24-46). On October 17, 2011, the ALJ found that plaintiff was not under a disability as defined in the Act. (Tr. 8-23). On November 1, 2012, the Appeals Council denied plaintiff's request for review (Tr. 1-7). Therefore, the decision of the ALJ stands as the final decision of the Commissioner.

## II. STANDARD FOR JUDICIAL REVIEW

Sections 205(g) and 1631(c)(3) of the Act, 42 U.S.C. §§ 405(g) and 1383(c)(3), respectively, provide for judicial review of a "final decision" of the Commissioner. The standard for judicial review by the federal district court is whether the decision of the Commissioner was supported by substantial evidence. 42 U.S.C. § 405(g); 42 U.S.C. § 1383(c)(3); Richardson v. Perales, 402 U.S. 389, 401 (1971); Mittlestedt v. Apfel, 204 F.3d 847, 850-51 (8th Cir. 2000); Johnson v. Chater, 108 F.3d 178, 179 (8th Cir. 1997); Andler v. Chater, 100 F.3d 1389, 1392 (8th Cir. 1996). The determination of whether the Commissioner's decision is supported by substantial evidence requires review of the entire record, considering the evidence in support of and in opposition to the Commissioner's decision. Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); Thomas v. Sullivan, 876 F.2d 666, 669 (8th Cir. 1989). "The Court must also take into consideration the weight of the evidence in the record and apply a balancing test to evidence which is contradictory." Wilcutts v. Apfel, 143 F.3d 1134, 1136 (8th Cir. 1998) (citing Steadman v. Securities & Exchange Commission, 450 U.S. 91, 99 (1981)).

Substantial evidence means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. at 401; Jernigan v. Sullivan, 948 F.2d 1070, 1073 n. 5 (8th Cir. 1991). However, the substantial evidence standard presupposes a zone of choice within which the decision makers can go either way, without interference by the courts. "[A]n administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." Id.; Clarke v. Bowen, 843 F.2d 271, 272-73 (8th Cir. 1988).

## III. BURDEN OF PROOF AND SEQUENTIAL EVALUATION PROCESS

An individual claiming disability benefits has the burden of proving she is unable to return to past relevant work by reason of a medically-determinable physical or mental

impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). If the plaintiff establishes that she is unable to return to past relevant work because of the disability, the burden of persuasion shifts to the Commissioner to establish that there is some other type of substantial gainful activity in the national economy that the plaintiff can perform. Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000); Brock v. Apfel, 118 F. Supp. 2d 974 (W.D. Mo. 2000).

The Social Security Administration has promulgated detailed regulations setting out a sequential evaluation process to determine whether a claimant is disabled. These regulations are codified at 20 C.F.R. §§ 404.1501, et seq. and 416.901, et seq. The five-step sequential evaluation process used by the Commissioner is outlined in 20 C.F.R. §§ 404.1520 and 416.920 and is summarized as follows:

1. Is the claimant performing substantial gainful activity?

   Yes = not disabled.
   No = go to next step.

2. Does the claimant have a severe impairment or a combination of impairments which significantly limits her ability to do basic work activities?

   No = not disabled.
   Yes = go to next step.

3. Does the impairment meet or equal a listed impairment in Appendix 1?

   Yes = disabled.
   No = go to next step.

4. Does the impairment prevent the claimant from doing past relevant work?

   No = not disabled.
   Yes = go to next step where burden shifts to Commissioner.

5. Does the impairment prevent the claimant from doing any other work?

   Yes = disabled.
   No = not disabled.

3

IV. **THE RECORD**

The record consists of the testimony of plaintiff and a vocational expert at the September 6, 2011 hearing, in addition to documentary evidence admitted at the hearing.

A. **ADMINISTRATIVE REPORTS**

The record includes the following report showing plaintiff's earnings for the years 2002 through 2011:

| Year | Earnings | Year | Earnings |
|------|----------|------|----------|
| 2002 | $ 186.35 | 2007 | $1,828.77 |
| 2003 | .00 | 2008 | .00 |
| 2004 | 784.95 | 2009 | 687.00 |
| 2005 | .00 | 2010 | .00 |
| 2006 | 1,486.99 | 2011 | .00 |

(Tr. 138).

B. **SUMMARY OF MEDICAL RECORDS**

As summarized by plaintiff and defendant, the medical evidence reveals clinical signs and laboratory findings of both physical and mental impairments.

C. **SUMMARY OF TESTIMONY**

At the September 6, 2011 hearing, testimony was taken from plaintiff and Jennifer Ann Maginnis, M.S., a vocational expert (Tr. 121-22).

1. **Plaintiff's testimony**

Plaintiff testified that she was 26 years old, weighed 110 pounds, stood 5'5" tall, and has a high school education with one year of college (Tr. 26-27).

When questioned as to why she is unable to work, plaintiff reported her major problem is a seizure disorder (Tr. 29-32). Plaintiff stated that her last seizure with loss of consciousness

was in March of 2011; however, plaintiff related that she also has seizure-like events that cause her to "stare off into space," but not lose consciousness, three-to-five times a day; the staring spells last five to seven minutes; and she can resume activity if someone interrupts her (Tr. 30, 41).

When questioned as to any other medical problems, plaintiff described back pain, depression, and anxiety (Tr. 32-34).

Plaintiff stated that her daily activities include preparing simple meals, washing laundry, reading, watching television, shopping for groceries once a month, and occasionally walking to the end of her street (Tr. 35-37).

**2.  Vocational expert testimony**

Jennifer Ann Maginnis, a vocational expert, testified at the request of the ALJ.

Ms. Maginnis and the ALJ agreed that plaintiff has no past relevant work history (Tr. 43).

The ALJ posed a hypothetical question limited to light work. The hypothetical individual was limited to simple and routine work that would allow the individual to be off-task eight per cent of the time. The expert opined that such a hypothetical individual could perform light unskilled occupations including information clerk, parking-lot attendant, and ticket seller.

Ms. Maginnis opined that the hypothetical individual could miss one-to-two days of work a month before being disciplined or dismissed; could not experience three-to-five episodes of staring off into space; and could not be restricted to only occasional contact with the public. The expert opined the identified jobs typically require standing.

**V.  FINDINGS OF THE ALJ**

On October 17, 2011, ALJ Richard Mueller entered his decision finding that plaintiff has not engaged in substantial gainful activity since September 29, 2009, when she filed her claim (Tr. 13). The ALJ found that plaintiff's severe impairments included back and seizure disorders; that plaintiff's non-severe impairments include anxiety and personality disorders; and that

plaintiff's impairments of questionable etiology include lower extremity and knee stiffness (Tr. 13-14). The ALJ found that no impairment meets or equals the severity requirements of a Listing (Tr. 13-14). The ALJ found that plaintiff retains the ability to perform simple, routine light work that would allow her to be off-task eight percent of the time (Tr. 14-17). Although the ALJ found that plaintiff has no past relevant work (Tr. 17), the ALJ found that plaintiff could perform other jobs that exist in significant numbers in the national economy (Tr. 17-18). Therefore, the ALJ concluded that plaintiff is not disabled (Tr. 19).

## VI.   ANALYSIS

### A.   RFC

Plaintiff first argues that the ALJ erred in assessing her RFC by failing to include any limitations due to her seizure disorder despite her treating sources' recommendations. Specifically, plaintiff cites the recommendations that she observe safety precautions, e.g., no work at high places or with dangerous machinery.

The ALJ correctly included only plaintiff's credible limitations in his RFC determination. See Wildman v. Astrue, 596 F.3d 959, 966 (8th Cir. 2010); see also Gragg v. Astrue, 615 F.3d 932, 940 (8th Cir. 2010); Heino v. Astrue, 578 F.3d 873, 882 (8th Cir. 2009).

While the ALJ found that plaintiff's seizures are severe, the judge found the allegations only partially credible. The ALJ concluded that the seizures occur less frequently then alleged. I agree. For example, during the period September 2009 (the date plaintiff filed her claim) through October 2011 (the date when the ALJ issued his decision), plaintiff reported only three grand mal seizures to her medical providers: March 2010 (Tr. 496-97), September 2010 (Tr. 537-39), and February 2011 (Tr. 523-26). Furthermore, plaintiff's treating doctor opined that the first seizure was likely caused by medical stress due to anxiety about teeth removal (Tr. 496-97), and treating sources suggested that the September 2010 seizure was caused by noncompliance with medication treatment (Tr. 538).

6

The ALJ discussed and discounted various statements by plaintiff and her treatment providers alleging nighttime seizures, a need to be shaken to come out of a staring spell, and lengthy post-ictal symptoms such as a need to rest, lack of memory, and the like, because plaintiff did not require frequent emergency-room visits or hospitalizations to treat her seizures. I note that there are no doctor appointments, emergency-room visits, or hospitalization to treat injuries caused by nighttime seizures.

Even when treating sources recommended safety precautions, these terminated after plaintiff was seizure free for six months. In Barnhart v. Walton, 535 U.S. 212 (2002), the Supreme Court upheld the Commissioner's interpretation of the statutory definition requiring that disability, not only the impairment, must have existed or be expected to exist for 12 months or longer.

I concur with the ALJ's position that long-term safety precautions were not appropriate here because the seizures were not as severe as alleged, did not result in injury, occurred infrequently, were largely controlled on medication, and could have been prevented by plaintiff taking anti-convulsive medication as directed and by her prophylactic use of anti-anxiety medication.

Plaintiff also argues that the limitations resulting from her seizure disorder include more than the limits on working at unprotected heights or working around moving, dangerous machinery; and cites a doctor who recommended "no bathtub bathing when unattended, no swimming . . . and no childcare unattended" (Tr. 298). However, the three jobs identified by the expert do not require bathtub bathing, swimming, or childcare.

Plaintiff cites another opinion by a treating nurse practitioner that includes limitations on numerous exertional and non-exertional activities including lifting, carrying, standing, walking, sitting, climbing, balancing, stooping, kneeling, crouching, crawling, reaching, handling, fingering, feeling, seeing, speaking, hearing, resting, and concentrating (Tr. 543). The ALJ

7

discussed the opinion but gave it little weight because it came from a nurse practitioner, not from an acceptable source such as a doctor or licensed psychologist. The ALJ also referenced other medical examinations performed by the same nurse that repeatedly reported no abnormal clinical signs.

Finally, plaintiff complains that the ALJ did not discuss how he arrived at off-task restriction based on the record. Plaintiff argues that the ALJ's RFC should have included extensive non-exertional limitations and in support of the argument cites (1) statements by the nurse practitioner describing post-ictal effects from the grand mall seizures requiring rest, and also describing difficulty with concentration, and (2) recent statements by mental-health providers describing substantial non-exertional limitations.

As discussed above, the nurse is not an acceptable medical source and the treatment records here conflict with the nurse's opinions. As for the mental health providers' opinions, they do not deal with plaintiff's seizure disorder, but with restrictions after October 2011, triggered when plaintiff's youngest son visited his father and the father refused to allow the boy to return to plaintiff.

### B. CREDIBILITY

Finally, plaintiff argues that the ALJ erred in not finding plaintiff credible.

The credibility of a plaintiff's subjective testimony is primarily for the Commissioner to decide, not the courts. Rautio v. Bowen, 862 F.2d 176, 178 (8th Cir. 1988); Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987). If there are inconsistencies in the record as a whole, the ALJ may discount subjective complaints. Gray v. Apfel, 192 F.3d 799, 803 (8th Cir. 1999); McClees v. Shalala, 2 F.3d 301, 303 (8th Cir. 1993). The ALJ, however, must make express credibility determinations and set forth the inconsistencies that led to his or her conclusions. Hall v. Chater, 62 F.3d 220, 223 (8th Cir. 1995); Robinson v. Sullivan, 956 F.2d 836, 839 (8th Cir. 1992). If an

ALJ explicitly discredits testimony and gives legally sufficient reasons for doing so, the court will defer to the ALJ's judgment unless it is not supported by substantial evidence on the record as a whole. Robinson v. Sullivan, 956 F.2d at 841.

Subjective complaints may not be evaluated solely on the basis of objective medical evidence or personal observations by the ALJ. In determining credibility, consideration must be given to all relevant factors, including plaintiff's prior work record and observations by third parties and treating and examining physicians relating to such matters as plaintiff's daily activities; the duration, frequency, and intensity of the symptoms; precipitating and aggravating factors; dosage, effectiveness, and side effects of medication; and functional restrictions. Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). Social Security Ruling 96-7p encompasses the same factors as those enumerated in the Polaski opinion, and additionally states that the following factors should be considered: (1) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms, and (2) any measures other than treatment the individual uses or used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board).

In his decision, the ALJ discussed the medical evidence that included laboratory testing that was inconsistent with plaintiff's complaints, e.g., a December 2008 MRI (Tr. 428) and October 2009 electroencephalogram (EEG) (Tr. 408). I note that plaintiff cites an August 2011, 24-hour EEG as supporting her allegations of frequent staring spells, however the treating doctor found that the reported symptoms did not correlate with epileptiform discharges on the EEG and that the generalized epileptiform discharges present on the EEG did not correlate with any reported seizure symptoms. Furthermore, plaintiff cross-examined the EEG technicians about whether "they thought that [the EEG] would help her get disability" (Tr. 571).

The ALJ cited (1) a March 8, 2011 report by plaintiff that she was doing good, that her

most recent seizure was three weeks prior to the visit, and that she had not experienced any seizures (Tr. 523), and (2) a June 8, 2011 report by plaintiff when she denied having any seizures (Tr. 550).[1] Additionally, defendant identifies other occasions when plaintiff reported less-frequent seizure activity than alleged at the hearing: on January 6, 2009, plaintiff reported that her seizures had improved and she had several seizure-free days during the previous month (Tr. 382-85); on February 17, 2009, plaintiff said she was doing a lot better and had no recent seizures (Tr. 335, 378, 470); on September 29, 2009, plaintiff reported that she experienced a staring amnestic seizure six week prior to that date (Tr. 466); on November 16, 2009, plaintiff reported that she had not had a seizure in at least four months (Tr. 461); on March 19, 2010, plaintiff reported a then-recent seizure, but her doctor opined that it was likely the result of medical stress caused by the removal of teeth (Tr. 496-97);[2] on September 16, 2010, plaintiff reported that she had a seizure, however her treating nurse noted that the symptoms were probably triggered by noncompliance with plaintiff's prescribed medication regimen (Tr. 538); and on December 7, 2010, plaintiff did not report any then-recent seizure activity (Tr. 527).

The ALJ questioned plaintiff's treatment compliance, citing the September 2010 statement by a treating source that plaintiff's seizure probably was caused by noncompliance with her prescribed medication regimen (Tr. 538).[3] In response to plaintiff's assertion that nowhere else does the record reflect noncompliance, defendant points to an observation by

---

[1] In his decision, the ALJ cited the March 8, 2011 visit as having occurred on May 10, 2011 and the June 8, 2011 visit as having occurred on August 12, 2011; however, the May and August 2011 dates are the dates that the reports about the visits were printed, not the dates that the visits occurred.

[2] The doctor instructed plaintiff to take anti-anxiety medication prior to any future medical procedures to prevent a reoccurrence of the medical-stress seizure (Tr. 497).

[3] Although plaintiff argues on appeal that her September 2010 noncompliance was due to adverse side-effects, if does not negate the fact that one of the three September 2009-October 2011 grand mall seizures occurred due to noncompliance. This is significant since the earlier 2010 seizure was triggered by medical stress and the 2011 seizure was due to noncompliance. In summary, all three grand mall seizures between September 2009 and October 2011 were due to extenuating circumstances.

plaintiff's treating nurse in March 2011, reporting that plaintiff was not taking her medication and that her case was complicated by a history of noncompliance (Tr. 525).

The ALJ also observed that there is no evidence of frequent emergency room visits or hospitalizations for treatment of the seizures. Indeed, plaintiff's treating medical providers repeatedly opined that plaintiff's grand mal seizures were controlled by medication (Tr. 528, 546, 551, 561, 571).

The ALJ also recognized that plaintiff has a back condition requiring a limited level of treatment. There have been no hospitalizations or surgeries to address the problem. While evidence accompanying the request for review included an October2011 lumbar-spine CT scan, plaintiff was being treated for the then-recent low-back pain, but the scan was inconclusive as to whether there was disc budging or disc herniation (Tr. 638). Although an MRI was recommended, none was performed or, at least, is in the record. Plaintiff does not use an assistive device for ambulation, does not wear a back brace, and does not employ a TENS unit; she does not receive epidural steroid injections, acupuncture, chiropractic adjustments, or osteopathic manipulations; and she does not attend a pain clinic or a work-hardening program.

As to mental-health concerns, during the period between the filing of the current claim in September 2009, and the issuance of the ALJ's decision in October 2011, plaintiff was not treated by a mental health professional for any emotional impairment.[4] As noted by the ALJ, the only evidence as to a mental impairment is a 2005 evaluation when plaintiff described insomnia, panic attacks, and depressed mood. The diagnosis was a depressive disorder.

In summary, the ALJ found that neither the medical evidence nor the level of treatment supported the plaintiff's allegations. From my review, there is substantial evidence to support those findings.

---

[4] After the ALJ issued his decision in October 2011, plaintiff was treated by mental health professionals for both affective and anxiety disorders triggered by her son's father's refusal to allow him to return to

The plaintiff also challenges the ALJ's findings as to her daily activities.

The ALJ discussed plaintiff's daily activities and found them inconsistent with her allegations. See Medhaug v. Astrue, 578 F.3d 805, 817 (8th Cir. 2009) (acts such as cooking, vacuuming, washing dishes, doing laundry, shopping, driving, and walking, are inconsistent with subjective complaints of disabling impairments); Young v. Apfel, 221 F.3d 1065, 1069 (8th Cir. 2000); see also 20 C.F.R. § 416.929(c)(3)(i).

As to plaintiff's hearing testimony about her daily activities, plaintiff interpreted the testimony one way and the ALJ interpreted it another way.

Evidence that both supports and detracts from the Commissioner's decision should be considered, and an administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion. See Finch v Astrue, 547 F.3d 933, 935 (8th Cir. 2008). A court should disturb the ALJ's decision only if it falls outside the available "zone of choice" and a decision is not outside that zone of choice simply because the court may have reached a different conclusion had the court been the fact finder in the first instance. Buckner v. Astrue, 646 F.3d 549, 556 (8th Cir. 2011); see McNamara v. Astrue, 590 F.3d 607, 610 (8th Cir. 2010) (if substantial evidence supports the Commissioner's decision, the court "may not reverse, even if inconsistent conclusions may be drawn from the evidence, and [the court] may have reached a different outcome"). The Eighth Circuit has repeatedly held that a court should "defer heavily to the findings and conclusions" of the Social Security Administration. Hurd v. Astrue, 621 F.3d 734, 738 (8th Cir. 2010); Howard v. Massanari, 255 F.3d 577, 581 (8th Cir. 2001).

I find the ALJ's interpretation is reasonable, especially considering the December 2009 *Function Report-Adult* that is consistent with the ALJ's interpretation of plaintiff's testimony (Tr. 159-70).

## VII. CONCLUSIONS

---

plaintiff's custody (Tr.581-98, 599-609, 610-20, 621-38).

Based on all of the above, I find that the substantial evidence in the record as a whole supports the ALJ's decision finding plaintiff not disabled. Therefore, it is

ORDERED that plaintiff's motion for summary judgment is denied. It is further

ORDERED that the decision of the Commissioner is affirmed.

*/s/ Robert E. Larsen*
ROBERT E. LARSEN
United States Magistrate Judge

February 27, 2014
Kansas City, Missouri